J. T. Shields, Special J.,
delivered tlie opinion of the Court.
This is an action of trespass, for an alleged assault" and battery and false imprisonment, instituted by the defendant in error, against, the plaintiff in error, in the Circuit Court of Greene County, on the 19th of April, 1865.
On the 12th of June, 1866, William Girdner filed a plea of not guilty.
On the 5th of June, 1865, Joseph B. Walker and Ephraim Link filed a plea of not guilty.
On the 11th of October, 1866, James Allen filed a plea of not guilty, and at the same time two other pleas, to-wit: 1st, That he was not guilty within one year next before the commencement of the action, and 2d, That he was not guilty within one year next before the adoption of the Schedule of the amended Constitution.
The defendant in error filed a demurrer to the last two pleas, which was sustained by the Court, and this action of the Court below, presents the first question that arises upon the record before us, for our consideration.
*282 It appears, from the face of the declaration, that the alleged trespass was committed on the 11th of September, 1861, more than three years before the suit was instituted; and by our statute of limitation of actions, Code, 2772, actions for injuries to the person, and false imprisonment, are required to be commenced within one year from the time the cause of action accrued. But it is insisted, in argument, that, by section 4 of the Schedule to the “ amendment to the Constitution,” adopted on the 22d of February, 1865, it is expressly provided that “no statute of limitations shall be held to operate from and after •May 6, 1861, until such time hereafter, as the Legislature may prescribe.” This is true, and by the Act of May 30, 1865, c. 10, s. 1, it is enacted “that no statute of limitation shall be held to operate from and after May 6, 1861, to the 1st day of January, 1867, and from the latter date the statute of limitations shall commence their operation, according to existing laws, and the time between the 6th May, 1861, and the 1st day of January, 1867, shall not be computed.” And the new Constitution of the State of Tennessee, ratified March 26, 1870, Schedule, section 4, contains the following provision on the same subject: “The time which has elapsed from the 6th day of May, 1861, until the 1st day of January; 1867, shall not be computed in any cases affected by the statutes of limitation. .
It is to be borne in mind that the alleged cause of action, in the case before us, accrued in September, 1861; that the statute of limitations, applicable to the appropriate action for the redress of the injury, was one year, so that by the law in force at the time, the action *283 was barred, and tbe plaintiff in ' error had a vested right to plead and rely upon the protection of the statute, in September, 1862, long before the action was instituted, and long before the said amendments, the said statute and the new Constitution, were adopted and enacted.
We are, therefore, under the necessity of determining whether a convention or a legislature has the power, after a cause of action is clearly barred, and the party has a clear vested right to plead a statute of limitation in his defense, by a retrospective statute, ordinance or resolution, to divest the right to the defense and revive the right to maintain the action.
The principle in the government of England that the Parliament is omnipotent, does not prevail in the United States, though, if there be no constitutional objection to a statute, it is with us absolutely binding; but, under our written, organic law, ascertaining and limiting the powers and duties of the several departments of the Government, State and National, an act of the legislature may be void, as in contravention of the constitution.
The law with us must conform, in the first place, to the Constitution of the United States, and then to the Constitution of its particular State, and so far as it is an infraction of either, it is void. The courts of justice have the right, and it is their imperative duty, to subject every law to the test of the Constitution, first of the United States, and then of their own State, as the supreme law of the land. Every act of the legislature, contrary to the true intent and meaning of the Constitution, is absolutely null and void; and the judicial department is the proper power in the Government to de *284 termine the question. 1 Kent, 485, 486. This is an elementary and familiar principle in our Government. Nor does a convention, convened by the people of a State, stand on any higher ground. A convention, called for the purpose of amending, revising or framing a new State constitution, has no more power to violate the National Constitution than has a State legislature. “If it were so,” says Judge Turley, “there would be no safety under our form of government in times of excitement.” Union Bank of Tennessee v. The State, 9 Yerg., 490, The power of the judiciary to bring to the test of the Constitution of the United States the action of a convention, has been frequently exercised. Cummings v. Missouri, 4 Wallace, 595.
It is clear, then, that the action of the two conventions and the Act of the Legislature upon the question under judgment, stands upon the same ground, and are in precisely the same category with reference to their validity under the Constitution.
We proceed then, in the exercise of our unquestionable right, and in the discharge of our most solemn and bounden judicial duty, to determine the question whether the two conventions and the Legislature had the power, under our fundamental laws, to deprive the plaintiff in error of the defense which had accrued to him under the law of the land, as it was clearly in force at the time.
In view of the frequency with which this and analogous questions have come before the judicial tribunals of the country, and of the elaborate and exhaustive discussion which they have undergone; and holding it our solemn duty to be guided by those principles *285 of interpretation and construction which the sages of American constitutional law have adopted and applied, and that their conclusions are to be received with the highest respect, we shall not attempt any protracted discussion, but content ourselves with stating and declaring the law as it has been handed down to us by the great founders and expounders of the Constitution who have gone before us, and whose memory is revered for their purity of purpose, their love of constitutional liberty, far-seeing wisdom, and profound learning.
A statute retrospective in its character and operation, directly affecting and divesting vested rights, is very generally considered, in this country, as founded on unconstitutional principles, and consequently inoperative and void. 1 Kent, 453, citing Osborne v. Huger, 1 Bay, 179; Ogden v. Blackledge, 2 Cranch, 272; Bedford v. Shilling, 4 Sergeant & Rawle, 401; Society v. Wheeler, 2 Gallison, 105; Colony v. Dublin, 32 (N. H.), 432; Torry v. Corliss, 33 (Maine), 333; and numerous other authorities.
“It seems to be the general opinion,” says Judge Story, 2 Com. on Con., § 1399, “fortified by a strong current of judicial opinion, that since the American Revolution, no State government can be presumed to possess the transcendental sovereignty to take away vested rights of property.”
“It is to be deduced as a correct conclusion from the decided eases,” says Sedgwick in his excellent work on statutory and constitutional law, “that a statute which, without some controlling public necessity, and for public objects, seeks to interfere with vested rights of private *286 property, is beyond the true limit of legislative power.” p. 177.
The power to pass such laws has been almost universally denied to exist in this, country, under our written constitutions, interpreted according to their spirit and true meaning; and such is also the sentiment and opinion of the philosophical and text writers of other countries. Puffendorf says, “a law can be repealed by the lawgiver; but the rights which have been acquired under it while it was in force, do not thereby cease.” The same doctrine is to be'found in Bracton, Lord Bacon, in Bacon’s Abridgement, and was a maxim of the civil law. It is to be found in many European codes of la\v; and in England, where there is no absolute restriction upon the legislative department of the government, it has been adhered to with great strictness.
The principle being well settled and established, the next inquiry is, does the case before us come within it? A statute which takes away or impairs any vested rights, is retrospective and retroactive. Society for Prop. of Gospel v. Wheeler, 2 Gallison, 105. And we hold, both on authority and principle, when a cause of action is barred by a statute of limitation, in force at the time the right to sue arose, and until the time o'f limitation expired, that the right to rely upon the statute as a defense is a vested right that can not be disturbed by subsequent legislation.
Judge Cooley, in his work on Constitutional Limitations, 369, says: “As to the circumstances under which a man may be said to have a vested right to a defense, it is somewhat difficult to lay down a comprehensive *287 rule. He who has satisfied a demand can not have it revived against him; and Re who has become released from a demand by the operation of the statute of limitations, is equally protected. In both cases, the right is gone; and to restore it would be to create a new contract . for the parties — a thing quite beyond the power of legislation.”
The power of the Legislature to regulate the remedy, or to extend the time of limitation before it has completely run, are questions not involved in this case, and stand upon different principles. The question is, as to the power to extend the time, when the cause of action is already barred; and it has been uniformly held, so far as our researches have extended, that it can not be done. In the case of Woart v. Winnick, 3 N. H. Rep., 473, it was expressly held that an Act of the Legislature repealing An Act of limitation, was, with respect to all actions pending at the time of the repeal, which were previovsly barred, null and void. This case, however, was decided under a provision in the Constitution of that State. But in many other cases, in the States of Massachusetts, Michigan, Arkansas, Mississippi, Pennsylvania, Iowa, Indiana and Vermont, cited by Mr. Angel in his highly esteemed and authoritative work on Limitations of Actions at Law, the same general doctrines seem to have been held. Ang. on Lim., 22, 23, note. Although our own courts seem not to have been called upon, heretofore, to adjudicate this precise question, yet they have uniformly held that a claim barred by a statute of limitation is deemed in law to be extinguished and discharged. 9 Yerg., 543; and consequently, to re *288 vive it is to interfere with a vested right. In some of the cases, and also ins ome of the text writers, as in Cooley, 365, the subject matter of the controversy and of the application of the doctrine, is mentioned as property; in others, the rule is stated as being applicable to all demands that are barred. There can be no' difference in principle whether it is a right to recover land or personal property in specie, or damages for the breach of a contract, or for a tort. We therefore hold section 4 of the Schedule of the amended Constitution of 1865, and section 4 of the Schedule of the new Constitution of 1870, and the Act of May 30, 1865, c. 10, sec. 1, so far as by their terms and effect they authorize the institution of suits to recover on. demands, whether arising ex contractu or ex delicto, that were, at the times of these several enactments and resolutions, already barred by existing laws, to be null and void.
It is further insisted that the alleged cause of action originated during a civil war, whereby the Courts were closed, which continued during the whole time of the limitation, and for that reason the statute did not run. This is a question, which, to our knowledge, has never received in this country any direct judicial consideration, and as to which there appears to be some conflict of opinion among the English authorities. “It seems agreed,” we read in Bacon’s Abridgement, vol. 6, 395, Bouvier’s ed., “that there being no Court, or the Courts of Justice being shut, is no plea to avoid the statute of limitation; as.where, after the civil war, an assumpsit was brought, and the defendant pleaded the statute of limitation; to which the plaintiff replied, that a civil war had broke *289 out; and that the government was usurped by certain traitors and rebels, which hindered the courts of justice, and by which the Courts were shut up; and that within six years after the war ended, he commenced his action; this replication was held ill, for the statute being general, must work on all cases which are not exempted by exception.” In Guion v. Bradley Academy, 4 Yerg., 253, and in Cocke & Jack v. McGinnis, M. & Y., 361, 7, in which, on other grounds, it was insisted that the statute had’ not run, it was held that nothing was better settled than that the Courts can make no other exceptions to the enacting and barring clauses of the statute, but such as are made by the Legislature, for it would be legislating to do so. And such seems to have been the opinion of our legislative bodies from the times of the civil commotions and disturbances of the Revolutionary war down to the present time, for by a very old statute, to. be found in 1 Scott’s Laws of Tennessee, 277, a provision is made for the suspension of the statutes of limitation during “the intrusion of a destructive war;” and it is further to be seen by a provision in the same statute, that it was the sense of the body that enacted that statute, that it had no power to revive a cause of action that was already clearly barred. During the continuance of the war, other and similar laws were passed, all to be found preserved in the same venerable collection of o.ur early statute laws.
But we do not feel ourselves called upon to decide the question at present, as it does not appear in this record that the Courts were closed against the institution of process in the years 1861 and 1862, and this could not, in fact, have been made to appear, as we judicially know that such was not the fact.
*290 The demurrer to the plea of the statute of limitations, filed by Allen, having been sustained, the case was submitted to a jury, on the several pleas of not guilty, who found for the plaintiff below, and assessed his damages at two thousand dollars. A rule to show cause why the verdict should be set aside and a new trial granted, was entered by the plaintiffs in error, and continued until the next term of the court. This rule, at the next term, was made absolute as to Link, but discharged as to the other plaintiffs in error, and judgment against them was rendered on the verdict of the jury. A bill of exceptions was filed, at this term, by the parties against whom the judgment was rendered, and they prosecute this appeal in the nature of a writ of error.
Our holding upon the question of the statute of limitations, reverses the judgment as to Allen, who alone pleaded that defense. But as to the defendants, Gird-ner and Walker, we are compelled to affirm the judgment. We cannot regard the bill of exceptions as a part of the record. It was not made and signed at the term when the cause was tried, and as is now well settled, it could not be done afterwards, so as to make it a part of the record. †
We. reverse the final judgment as to Allen, and also the judgment sustaining the demurrer to the plea of the statute of limitations, and overrule the same; and remand the cause as to him, to the Circuit Court of *291 Greene county, with leave, to the defendant in error, to reply to the plea, which, when at issue, will be submitted to another jury, together with the issue on the plea of not guilty.
Affirm the judgment against 'Walker and Girdner.